**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Holly A. Young, *et al.*,

    Plaintiffs,                                        Case No. 1:12cv967

    v.                                              Judge Michael R. Barrett

State of Ohio, *et al*.

    Defendants.

**<u>OPINION & ORDER</u>**

This matter is before the Court upon Plaintiffs' Motion for Temporary Restraining Order (Doc. 2), Defendants' Response in Opposition (Doc. 9), and Defendant Clermont County Board of Developmental Disabilities' Amended Response in Opposition (Doc. 10). The Court held a hearing on Plaintiff's TRO Motion on January 3, 2013 ("TRO Hearing"). After the TRO Hearing, Plaintiffs filed a Reply. (Doc. 12.)

**I.    BACKGROUND**

Plaintiffs bring this action on behalf of their two-year old son, R.Y. (Doc. 1, ¶¶ 1-3.) R.Y will turn three years old on January 20, 2013. (Id., at 2, n.1.) R.Y has been diagnosed with moderate to severe autism spectrum disorder[1] and encephalopathy.[2]

---

[1]There are varying degrees of severity for individuals afflicted with autism which can be categorized with three main types: High functioning autism, mild autism and severe autism. "Federal regulations define autism as a 'developmental disability significantly effecting verbal and non-verbal communication and social interaction, generally evident before age 3, that adversely affects a child's educational performance. Other characteristics often associated with autism are engagement in repetitive activities and stereotyped movements, resistance to environmental change or change in daily routines, and unusual responses to sensory experiences.'" *Parents League for Effective Autism Services v. Jones-Kelly*, 339 Fed. Appx. 542 (6th Cir. 2009) (quoting 34 C.F.R. §300.8(C)(1)(i)). There are various treatments that may help ease the symptoms of severe autism, including Applied Behavior Analysis ("ABA"), speech therapy, physical therapy and play therapy.

(Id., ¶ 9.)

R.Y.'s pediatrician, Dr. Lynn K. Peters, first suspected that R.Y. had autism when R.Y was eighteen months old. (Id., ¶ 10.) On August 3, 2011, Dr. Peters referred R.Y. to the State of Ohio's "Help Me Grow" program to seek a determination as to whether R.Y qualified for early intervention services. (Id.) The Help Me Grow program is administered by the Ohio Department of Health and is funded under Part C of the Individuals with Disabilities Education Act ("IDEA").[3] The Help Me Grow program provides early intervention services to children under the age of three who meet the eligibility requirements established by the Ohio Department of Health. The early intervention services are provided by local agencies. In this matter, Clermont County Board of Developmental Disabilities is the service provider.

Under Part C of the IDEA, Help Me Grow is required to assess each infant or toddler with a disability and develop a written Individualized Family Services Plan ("IFSP"). 20 U.S.C. § 1436(a).[4] The IFSP is developed by a multidisciplinary team,

---

[2] Encephalopathy does not refer to a single disease but rather to a syndrome of global brain dysfunction which can be caused by many different illnesses.

[3] IDEA provides federal funding to states "on the condition that the states comply with the goals and procedures provided for by the Act." *Doe v. Smith*, 879 F.2d 1340, 1341 (6th Cir. 1989) (addressing the statute under its former name, the Education For All Handicapped Children Act of 1975).

[4] The applicable provision of IDEA provides:

(a) Assessment and program development

A statewide system described in section 1433 of this title shall provide, at a minimum, for each infant or toddler with a disability, and the infant's or toddler's family, to receive—

(1) a multidisciplinary assessment of the unique strengths and needs of the infant or toddler and the identification of services appropriate to meet such needs;

2

including the child's parents. *Id.* The IFSP is subject to periodic review. 20 U.S.C. § 1436(b).[5] Under R.Y.'s IFSP, Defendants were to provide speech therapy and early intervention services to R.Y.[6]

After R.Y. began receiving services through the Help Me Grow program, Plaintiffs brought R.Y to the Cincinnati Children's Hospital for an assessment by the Kelly O'Leary Center for Autism Spectrum Disorders. (Id., ¶¶ 13-14.) Plaintiffs did so on their own, and the assessment was not a part of the Help Me Grow program. In January of 2012, Children's Hospital stated that "[i]f at all possible, it is recommended that R.Y. obtain additional speech therapy services. Doing so will provide additional opportunity for developing receptive and expressive language skills." (Id., ¶ 14.) Children's Hospital also stated that "R.Y. would be a good candidate for Applied Behavioral Analysis (ABA) programming. ABA is an effective treatment for many young children with autism." (Id.) Children's Hospital recommended twenty-five to forty hours per

---

> (2) a family-directed assessment of the resources, priorities, and concerns of the family and the identification of the supports and services necessary to enhance the family's capacity to meet the developmental needs of the infant or toddler; and
>
> (3) a written individualized family service plan developed by a multidisciplinary team, including the parents, as required by subsection (e), including a description of the appropriate transition services for the infant or toddler.

20 U.S.C. § 1436(a).

[5] The applicable provision of IDEA provides that "[t]he individualized family service plan shall be evaluated once a year and the family shall be provided a review of the plan at 6-month intervals (or more often where appropriate based on infant or toddler and family needs)." 20 U.S.C. § 1436(b).

[6] At the TRO Hearing, counsel for the Clermont County Board of Developmental Disabilities stated that under his IFSP, R.Y. was to receive one hour per week of speech therapy and an unspecified amount of early intervention services. However, none of the IFSPs were placed in evidence, and it appears that Plaintiffs dispute how many hours of therapy R.Y actually received.

3

week of ABA treatment for R.Y. (Id.)

On February 7, 2012, Dr. Harriet H. Valentin of Cincinnati Children's Hospital stated:

> Many years of evidence-based research studies have proven time and time again that children with severe autism and developmental delay significantly benefit from speech and language therapy, occupational therapy and Applied Behavior Analysis (ABA). The combination of such early interventions are very important for R.Y. in order to specifically address his severe communication disorder, delayed developmental skills, and foster basic principal of social connectedness. Without these very important treatment interventions, I feel R.Y. is at risk for failing to develop his fullest potential and likely would be less independent in functioning later in life as a result.

(Id., ¶ 16.)

However, when Plaintiffs presented this information to Defendants, they refused to make changes to R.Y.'s IFSP which would reflect the recommendations made by Children's Hospital or Dr. Valentin. (Id., ¶ 17.) Defendants also refused to reimburse Plaintiffs for any treatment which they would pay for themselves. (Id., ¶ 19.)

On June 22, 2012, R.Y was assessed again by Trumpet Behavioral Health which recommended that R.Y. "receives 25-30 hours per week of intensive applied behavior analysis programming which will include systematic teaching of communication. Programming should be data-driven and monitored by a board certified behavior analyst who can make modifications based on R.Y.'s progress." (Id., ¶ 23.)

On July 11, 2012, Defendants informed Plaintiffs that the Help Me Grow program does not provide ABA therapy. (Id., ¶ 25.) When presented with the Trumpet Behavioral Health assessment, Defendants explained:

> While these goals are very ABA driven and we don't provide ABA services, it looks to me as though the focus is communication (expressive and receptive) and we certainly support working on that area and your

> priorities.  So, we've taken these Trumpet Behavioral Health ABA goals and tried to rework them into IFSP outcomes that address the fundamentals of what Trumpet Behavioral Health recommended while recognizing the family routines and ways to address these areas in ways that will hopefully be fun and fit into your family routines, and not burdensome for you and your family.

(Id., ¶ 25.)  At the TRO Hearing, Defendants explained that there is not a certified ABA provider within Clermont County and that Trumpet Behavioral Health is not an approved provider within the Help Me Grow program.

In August of 2012, Plaintiffs signed an IFSP, but noted their points of disagreement.  (Id., ¶ 27.)  On August 22, 2012, Defendants notified Plaintiffs that the IFSP was not valid because it included the points of disagreement.  (Id., ¶ 29.) Defendants then withdrew services on August 23, 2012.  (Id., ¶ 30.)  On October 31, 2012, Plaintiffs filed an administrative complaint against the Ohio Department of Health. An administrative hearing before a hearing officer is scheduled to commence on January 14, 2013. [7]

Between August 22, 2012 and the date of the TRO Hearing, R.Y. was not receiving any services paid for or provided by Help Me Grow.  However, at the hearing, the Court ordered that the parties immediately make arrangements for Defendants to provide R.Y. with the services which were not in dispute in the August 2012 IFSP.

Plaintiffs are not financially able to provide the full amount of ABA treatment

---

[7] The applicable State of Ohio regulations provide that when a complaint is filed, one of the options available to the parent is: "due process hearing, if the complaint alleges that the department, early intervention contractor or service provider proposes or refuses to initiate or change the identification, evaluation, or placement of an infant or toddler or the provision of early intervention services to the infant or toddler with a disability and that infant or toddler's family, which shall include scheduling a hearing before a qualified and impartial hearing officer who will provide a written decision within forty-five days from receipt of a request for a due process hearing."  Ohio Admin. Code 3701-8-10(3).  The parties explained at the TRO Hearing that there was an agreement between the parties that the written decision would be provided beyond the forty-five day deadline.

5

recommended for R.Y. (Id., ¶ 20.) While it is not in evidence, at the TRO hearing, counsel for Plaintiffs explained that Plaintiffs have been able to secure some amount of ABA treatment for R.Y. through a grant and fundraising efforts of their co-workers. There is no evidence in the record as to how many hours per week this treatment is being provided. However, Plaintiffs' Complaint states that the grant will expire in January. (Id., ¶ 57.)

Plaintiffs have named the State of Ohio, Ohio's IDEA Part C Coordinator, and the Clermont County Board of Developmental Disabilities as defendants in this matter. Plaintiffs claim that Defendants' withdraw of services on August 23, 2012 was a violation of Part C of the IDEA. Plaintiffs also allege that Defendants failed to "properly assess R.Y., failed to develop an adequate plan for his development, failed to provide essential early intervention services, failed to inform the Youngs about autism, and generally failed in many material respects to comply with the procedural and substantive requirements of IDEA Part C." (Id., ¶ 11.) Finally, Plaintiffs allege that Defendants have engaged in an official policy of a "systematic denial of intensive early intervention applied behavior analysis type treatment to children with autism who desperately need that essential service." (Id., ¶ 67.)

In the Complaint, Plaintiffs bring claims for denial of procedural due process and equal protection under 42 U.S.C. § 1983; a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; a violation of Part C of the IDEA; a violation of Title II of the Americans with Disabilities Act; retaliation under Section 504 of the Rehabilitation Act; breach of contract; and breach of public trust fiduciary duty.

In their Motion for Temporary Restraining Order, Plaintiffs seek an immediate

order requiring Defendants to provide and/or pay for the treatment recommended by Leslie Sinclair, who is associated with the Children's Hospital for Rehabilitation and Center for Autism in Cleveland, Ohio. (Doc. 2-2, Leslie Sinclair Aff.) Sinclair recommends that R.Y. receive forty hours per week of direct intervention and six hours per week of indirect intervention. (Id., ¶¶ 16-17.) The forty hours of direct intervention would consist of thirty-three hours of direct hands-on intensive behavioral in-home instruction, four hours of intensive behavioral speech language intervention, and three hours of behaviorally designed occupational therapy. (Id., ¶ 16.)

Defendants respond that Plaintiffs are not entitled to injunctive relief because (1) Plaintiffs have failed to exhaust their administrative remedies; (2) this Court should abstain from ruling because there are state administrative proceedings pending; and (3) Plaintiffs' requested relief would alter the *status quo*.

## II. ANALYSIS

### A. Administrative remedies

Defendants argue that Plaintiffs have failed to exhaust their administrative remedies before filing this case. Defendants maintain that Plaintiffs must proceed with the administrative hearing on January 14, 2013, and could then appeal any decision to either the proper state or federal district court.

Part C of the IDEA sets forth minimum procedural safeguards for the timely resolution of complaints by parents:

> Any party aggrieved by the findings and decision regarding an administrative complaint shall have the right to bring a civil action with respect to the complaint in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

7

20 U.S.C. § 1439(1).

It is well established under Part B of the IDEA,[8] that plaintiffs must exhaust their administrative remedies before filing a civil action to enforce their rights under the IDEA. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000) (citing *Doe v. Smith*, 879 F.2d 1340, 1343-44 (6th Cir. 1989), *cert. denied*, 493 U.S. 1025 (1990); *Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935-36 (6th Cir. 1989)). This requirement is based on the language of Part B of the IDEA itself, which sets forth the exhaustion requirement:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the American with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l). However, there is no corresponding requirement under Part C of the IDEA.

Defendants point out that the administrative regulations promulgated by the State of Ohio for the Help Me Grow program adopt the procedures applicable to appeals under Part B of the IDEA. (See Doc. 9, at 3, n.3.) However, the Court notes that while some of the procedures are adopted, the provision which sets forth the exhaustion requirement is not adopted. The Ohio administrative regulations which apply to the Help Me Grow program state that "[t]he due process hearing shall be conducted in accordance with 34 CFR 303.440 to 34 CFR 303.447 (in effect on July 1, 2012)." Ohio Admin. Code 3701-8-10. These federal regulations are the procedural safeguards

---

[8] Part B of the IDEA applies to children from the ages of three through twenty.

8

which apply to states that choose to adopt the Part B due process hearing procedures for their early intervention programs. While 34 C.F.R. § 303.448 sets forth the same exhaustion requirement as Part B,[9] the State of Ohio administrative regulations stop short of adopting 34 C.F.R. § 303.448, and only adopt the federal regulations through 34 C.F.R. § 303.447. Therefore, there is no exhaustion requirement in the applicable regulations promulgated by the State of Ohio.[10]

As a result, the Court finds that Plaintiffs were not required to exhaust any administrative remedies before filing their civil action in this Court.

**B. *Younger* abstention**

Defendants argue that this Court should abstain from taking any action under *Younger v. Harris*, 401 U.S. 37 (1971). Defendants point out that a hearing on Plaintiffs' administrative complaint is scheduled to commence on January 14, 2013.

In *Younger v. Harris*, the Supreme Court held that "a federal court should not enjoin a pending state criminal proceeding except in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury." *Ohio Civil Rights Comm'n v. Dayton Christian Schs.*, 477 U.S. 619, 626 (1986). While *Younger*

---

[9] 34 C.F.R. § 303.448 references 20 U.S.C. § 1415(l), and provides:

> Nothing in this part restricts or limits the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under these laws seeking relief that is also available under section 615 of the Act, the procedures under §§ 303.440 and 303.446 must be exhausted to the same extent as would be required had the action been brought under section 615 of the Act.

[10] Incidentally, the Court notes that if Ohio had chosen the Part C due process hearing procedures, those federal regulations merely provide that "[a]ny party aggrieved by the findings and decision issued pursuant to a due process complaint has the right to bring a civil action in State or Federal court under section 639(a)(1) of the Act." 34 C.F.R. § 303.438.

9

itself counsels federal courts to abstain from enjoining certain pending state court criminal proceedings, 401 U.S. at 44, the Supreme Court has extended the doctrine to ongoing state administrative proceedings. *See Ohio Civil Rights Comm'n*, 477 U.S. at 627 (extending *Younger* abstention to state administrative proceedings).

This Court considers three factors in determining whether to abstain from interfering in a state proceeding: "1) whether the underlying proceedings constitute an ongoing judicial proceeding, 2) whether the proceedings implicate an important state interest, and 3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge." *Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008) (citing *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001)).

However, the Sixth Circuit has limited the application of *Younger* in Section 1983 claims to cases where there are "coercive" state proceedings. *Devlin v. Kalm*, 594 F.3d 893, 895 (6th Cir. 2010). The court explained:

> In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. Moreover, the basis for the federal relief claimed is generally available to the would-be federal plaintiff as a defense in the state proceedings.

*Id*. at 894-95 (quoting *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 30 (6th Cir. 1984)). Therefore, "*Younger* does not apply when 'the federal plaintiffs are also *plaintiffs* in the state court action' and 'the plaintiffs are not attempting to use the federal courts to shield them from state court enforcement efforts.'" *Id*. at 895 (quoting *Crawley*, 744 F.2d at 30) (emphasis in original)); *cf Dayton Christian Schs.*, 477 U.S. at 627 n.2 (explaining *Younger* was applicable because the "administrative proceedings here are coercive rather than remedial").

10

The Court notes that Plaintiffs in this case are the plaintiffs in the state administrative proceedings. Those proceedings are remedial, and not coercive in nature. Plaintiffs are not attempting to use this Court to enjoin continuation of those proceedings. Therefore, the Court concludes that *Younger* is not applicable to this case.

### C. Injunctive relief

Under Federal Rule of Civil Procedure 65, injunctive relief is an extraordinary remedy whose purpose is to preserve the *status quo*. When determining whether to grant or deny a temporary restraining order or a preliminary injunction, this Court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Chabad of S. Oh. & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004) (quoting *Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.*, 110 F.3d 318, 322 (6th Cir. 1997)); *Michigan State AFL-CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997). The foregoing factors are not prerequisites, but rather are factors which the Court should balance. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004). The same analysis applies to motions for mandatory preliminary injunctive relief as well as motions for prohibitory preliminary injunctive relief. *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998).

### 1. Likelihood of success

Plaintiffs claim a violation of Part C of the IDEA. Part of their claim is based upon Defendants' withdraw of services on August 23, 2012.

As part of the development of the IFSP, Part C of the IDEA provides: "If the parents do not provide consent with respect to a particular early intervention service, then only the early intervention services to which consent is obtained shall be provided." 20 U.S.C. § 1436 (e). In addition, the minimal procedural safeguards of Part C of the IDEA require that:

> During the pendency of any proceeding or action involving a complaint by the parents of an infant or toddler with a disability, unless the State agency and the parents otherwise agree, the infant or toddler shall continue to receive the appropriate early intervention services currently being provided or, if applying for initial services, shall receive the services not in dispute.

20 U.S.C. § 1439.

Accordingly, Plaintiffs are likely to prevail on their claim that Defendants' withdraw of services on August 23, 2012 was a violation of Part C of the IDEA.

The next part of Plaintiffs' claim is that Defendants failed to "properly assess R.Y., failed to develop an adequate plan for his development, failed to provide essential early intervention services, failed to inform the Youngs about autism, and generally failed in many material respects to comply with the procedural and substantive requirements of IDEA Part C." In addition, Plaintiffs allege that Defendants have engaged in an official policy of a "systematic denial of intensive early intervention applied behavior analysis type treatment to children with autism who desperately need that essential service."

Several courts have used cases analyzing Part B of IDEA to make

determinations with regard to Part C. *See e.g.*, *Adams v. State of Oregon*, 195 F.3d 1141, 1148-49 (9th Cir. 1999). As one court has explained:

> Although the part H[11] provisions of the Act at issue here and those of part B at issue in *Burlington [v. Dep't of Educ.,* 471 U.S. 359 (1985)] and *Florence County [Sch. Dist. Four v. Carter Ex. Rel. Carter*, 510 U.S. 7 (1993)] are distinct in notable respects, their basic structure and purpose are strikingly similar: both define the population to be served, 20 U.S.C. § 1401(a)(1) (1994) (part B: "children with disabilities"), 20 U.S.C. § 1472(1) (1994) (part H: "infants and toddlers with disabilities"); both define the nature of the service to be provided, 20 U.S.C. § 1401(a)(18) (1994) (part B: "free appropriate public education"), 20 U.S.C. 1472(2) (1994) (part H: "early intervention services"); both establish mechanisms via which the state must provide such services, 20 U.S.C. § 1401(20) (1994) (part B: "individualized education program"), 20 U.S.C. § 1477 (1994) (part H: "individualized family service plan"); and both empower courts (in identical language) to effectuate the purposes of the Act, 20 U.S.C. § 1415(e)(2) (1994) (part B), 20 U.S.C. § 1480(1) (1994) (part H). Moreover, both provisions are animated by similar impulses, 20 U.S.C. § 1400(b), (c) (1994) (noting that part B was intended, *inter alia*, to enable disabled children to participate equally in society), 20 U.S.C. § 1471(a)(1) (1994) (noting, *inter alia*, need to "enhance the development of infants and toddlers with disabilities and to minimize their potential for developmental delay"). Accordingly, the principles underlying *Burlington*-that courts have broad equitable power to effectuate the purposes of the Act-and *Florence County*-that courts' equitable authority to effectuate the purposes of the Act is not strictly limited to provision of state certified service-fit well in the context of part H.

*Still v. DeBuono*, 101 F.3d 888, 892 (2d Cir. 1996).

The Sixth Circuit was has explained that there are two parts to a court's inquiry in suits brought pursuant to the IDEA. *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 853-54 (6th Cir. 2004). "First, the court must determine whether the school system has complied with the procedures set forth in the IDEA." *Id.* (citing *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982); *McLaughlin v. Holt Pub. Sch. Bd. of Educ.*, 320 F.3d 663, 669 (6th Cir. 2003)). "Second, the court must assess whether the IEP developed through those procedures was reasonably

---

[11] Part H was the predecessor to Part C of the IDEA.

calculated to enable the child to receive educational benefits." *Id.* at 853-54.

In *Deal v. Hamilton County*, the Deals' son attended a preschool program as part of his IEP. *Id.* at 845. However, the Deals began to teach their son outside school using a program consisting of ABA therapy. *Id.* at 845-46. Based on the progress made by their son, the Deals asked the school district to fund a 40-hour per week home-based ABA program for the summer, and year-round speech therapy. *Id.* at 846. The school district refused. *Id.* The Deals requested a due process hearing, and the administrative law judge found both procedural and substantive violations. *Id.* at 847-48.

The Sixth Circuit held that the facts of the case demonstrated that the school system had an unofficial policy of refusing to provide one-on-one ABA programs and the school system personnel were not willing to consider the provision of such a program. *Id.* at 858. The court found that this predetermination amounted to a procedural violation of the IDEA, which can cause substantial harm when it seriously infringes upon the parents' opportunity to participate in the IEP process. *Id.* at 859.

According to the Complaint, Defendants informed Plaintiffs that the Help Me Grow program does not provide ABA therapy. At the hearing, counsel for Clermont County Board of Developmental Disabilities informed the Court that there is no approved ABA provider located in Clermont County. At this stage of the proceedings, Plaintiffs have established based on this circumstantial evidence that the decision to not provide ABA therapy or approve ABA providers was a predetermination akin to that in *Deal*. Therefore, Plaintiffs have established a likelihood of success on their claim that Defendants have committed a procedural violation of the IDEA.

In support of their substantive violation, Plaintiffs rely on the affidavit of Leslie Sinclair, who is a speech/language pathologist who holds a certificate of clinical competence and is a board-certified behavioral analyst. (Sinclair Aff., ¶ 1.) Sinclair states that the time allotted by Help Me Grow for therapy is outdated and inconsistent with current research. (Id., ¶ 15.) Sinclair explains that the intervention provided to R.Y. "did not have the time, consistency, and repetitive requirements necessary for stable rates of performance to be gained." (Id., ¶ 14.) Sinclair explains that "[g]iven his pediatrician's suspicion of autism when R.Y. was 18 months, the educational expectation for R.Y. was that with prompt intensive behavioral intervention R.Y. should have acquired the basic cognitive foundations of learning now." (Id., ¶ 13.) Sinclair recommends that R.Y. receive forty hours per week of direct intervention and six hours per week of indirect intervention. (Id., ¶¶ 16-17.) The forty hours of direct intervention would consist of thirty-three hours of direct hands-on intensive behavioral in-home instruction, four hours of intensive behavioral speech language intervention, and three hours of behaviorally designed occupational therapy. (Id., ¶ 16.) The opinions of Sinclair are unopposed at this stage of the proceedings.[12]

In addition, as one court has observed: "when states fail to deliver appropriate services due to a shortage of providers who have been licensed or certified by the state, strict adherence to the statute's requirement that qualified (i.e., licensed or certified) personnel administer early intervention services even in cases when parents seek out

---

[12] The Court notes that Sinclair's opinion does not constitute irrefutable proof that Plaintiffs are entitled to relief on the merits. *Accord In re DeLorean Motor Co.*, 755 F.2d 1223, 1230 (6th Cir. 1985). However, "[a] party . . . is not required to prove his case in full at a preliminary injunction hearing. . . ." *Id.* (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

and procure such services would place an unreasonable burden on a parent's ability to obtain for a child the educational services of providers who are proficient, but not licensed or certified.  Such a burden is inconsistent with the remedial purpose of the statute."  *Still*, 101 F.3d at 893.  Therefore, the Court is not barred from ordering reimbursement for payments Plaintiffs have made to Trumpet Behavioral Health because Trumpet Behavioral Health is not an approved provider within the Help Me Grow program.

Accordingly, this Court finds that Plaintiffs have established a likelihood of success on their claim that Defendants have committed a substantive violation of the IDEA.  Therefore, this factor weighs in favor of Plaintiffs.

### 2. Irreparable injury

Defendants argue that this Court should not disturb the *status quo* by ordering that Defendants provide ABA therapy.  However, the *status quo* which the Court is seeking to protect is that of the development of R.Y.  According to Sinclair, the development period between ages eighteen months and three years is critical.  (Id., ¶ 12.)  Sinclair opines: "Due to the loss of critical periods of learning and time, RY's [*sic*] condition of autism is urgent.  In order to address his intense needs and the harm he has sustained due to the lack of early intervention and the erratic schedule of the therapy he has been afforded, the [recommended] resource allocations should be made available to him immediately."  (Id., ¶ 19.)  Sinclair explains that "[p]roviding these services now will begin to reduce the injury to R.Y." (Id.)

At the TRO Hearing, the parties indicated that the state administrative hearing will take at least a week and, in all likelihood, will be followed by a briefing schedule that

would contemplate the use of the transcript and other materials. Neither side could predict with confidence the likely timeframe for completing the record and briefing. Both sides agreed that once the record is closed and fully briefed, the hearing officer would render a decision in approximately thirty days.

In cases analyzing Part B of the IDEA, courts have repeatedly found that "the denial of a [free appropriate public education] over an extended period does constitute harm, and the longer that denial continues, the more irreparable it becomes." *Sabatini v. Corning-Painted Post Area Sch. Dist.*, 78 F. Supp. 2d 138, 143 (W.D.N.Y. 1999) (*citing Murphy v. Arlington Central Sch. Dist. Bd. of Educ.*, No. 99 CIV. 9294, 1999 WL 980164 *4 (S.D.N.Y. Oct. 28, 1999) (observing that Congress was concerned to avoid lengthy administrative appeals during which "the appropriateness of a child's educational placement remains in limbo")). One court has collected some of these cases:

> *J.B. [v. v. Killingly Bd. of Educ.]*, 990 F.Supp. at 72 [(D. Conn. 1997)] ("Thus, J.B. continues to be denied his right to a free appropriate public education and until he receives that to which he is entitled under the IDEA, he is suffering irreparable harm."); *A.T., I.T. [v. New York State Educ. Dept.]*, 1998 WL 765371, at *11 [(E.D.N.Y. Aug. 4, 1998)] ("Z.T.'s injury is actual and imminent because she is currently being deprived of the free appropriate public education to which she is entitled under the IDEA. . . . In the absence of an injunction, Z.T. faces further damage to her development. This type of injury cannot be remedied by an award of monetary damages, which of course would not provide Z.T. with the free and appropriate education that she has been denied."); *Kantak [v. v. Bd. of Educ., Liverpool Cent. Sch. Dist.]*, 1990 WL 36803, at * 2 [(N.D.N.Y. Mar. 30, 1990)] ("In the court's opinion, defendants' continued deprivation of the service of a teacher of the deaf for Cynthia Kantak, which has been determined to be necessary to best serve her individual educational requirements, would produce a sufficient injury to satisfy the first prong of the preliminary injunction test."); *John T. v. Delaware County Intermediate Unit*, 2000 WL 558582 at *8 (E.D.Pa. May 8, 2000) ("Compensation in money can never atone for deprivation of a meaningful education in an appropriate manner at the appropriate time.").

*Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375, 393 (N.D.N.Y. 2001) (noting that "[i]t is almost beyond dispute that wrongful discontinuation of a special education program to which a student is entitled subjects that student to actual irreparable harm.").

Accordingly, this Court finds that Plaintiffs have established that R.Y. will suffer irreparable harm if he is not provided appropriate early intervention services. As such, this factor weighs in favor of Plaintiffs.

### 3. Substantial harm to others

Defendants have not identified any specific harm that would result if they were ordered to provide the early intervention services recommended by Sinclair, or to reimburse Plaintiffs for payments made for such services provided by Trumpet Behavioral Health or another private provider.

As the Supreme Court has explained:

> There is no doubt that Congress has imposed a significant financial burden on the States and school districts that participate in IDEA. Yet public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice. This is IDEA's mandate, and school officials who conform to it need not worry about reimbursement claims.

*Florence County School District Four v. Carter*, 510 U.S. 7, 15 (1993). Moreover, the Supreme Court has also recognized that courts "retain discretion to reduce the amount of a reimbursement award if the equities so warrant." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009); *see also Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373-74 (1985) (explaining that "parents who unilaterally

18

change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk."). Accordingly, this Court finds that this factor weighs in favor of Plaintiffs.

### 4. Public interest

"[T]he maintenance of appropriate education services to disabled children is in the public interest, as Congress has detailed in the IDEA." *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark*, 344 F.3d 335, 352 (3d Cir. 2003); *see* 20 U.S.C. § 1400(c)(1) (explaining Congressional finding that "[i]mproving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities.").

Accordingly, this Court finds that this factor weighs in favor of Plaintiffs.

### III. CONCLUSION

Balancing the foregoing factors, the Court finds the equities weigh in Plaintiffs' favor. Therefore, Plaintiff's Motion for Temporary Restraining Order (Doc. 2) is **GRANTED.** The Court orders that the parties immediately develop a plan to provide at least 40 hours of ABA services per week to R.Y., or prospectively reimburse Plaintiffs for the payments made to Trumpet Behavioral Health or other private service provider to provide these services. These 40 hours should include the services this Court ordered that Defendants provide at the TRO hearing.

The Court recognizes that this ruling is further complicated by the near proximity of R.Y.'s third birthday which will move him from Part C to Part B of the IDEA. However, this Court concludes that R.Y.'s birthday has no effect on the provision of compensatory

education. As one court has observed, "[t]o give meaning to the state's obligations under Part C of the IDEA, compensatory education must be an available remedy for children who establish Part C violations but have since reached the age of three. Otherwise, the [defendant] and similar agencies could abrogate their responsibilities under the IDEA and escape any accountability simply by relying on the time-consuming appeals process." *Wagner v. Short*, 63 F. Supp. 2d 672, 677 (D. Md. 1999); *see also Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516 (D.C.Cir. 2005) (finding that "compensatory education awards fit comfortably within the 'broad discretion' of courts fashioning and enforcing IDEA remedies").

**IT IS SO ORDERED without BOND.**

                                          */s/ Michael R. Barrett*
                                     UNITED STATES DISTRICT JUDGE